IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                  Criminal Action No. 3:08cr401

MARCUS L. HARRIS,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Marcus L. Harris's MOTION TO DISMISS SUPERVISED RELEASE VIOLATION PETITION FOR LACK OF JURISDICTION (ECF No. 119). For the reasons set forth below, Defendant Marcus L. Harris's MOTION TO DISMISS SUPERVISED RELEASE VIOLATION PETITION FOR LACK OF JURISDICTION (ECF No. 119) will be denied.

**PROCEDURAL HISTORY**

In 2010, Marcus L. Harris ("Harris") was sentenced to 96 months incarceration and four years of supervised release for possession with intent to distribute crack cocaine. (ECF No. 28). That sentence was subsequently reduced. (Order, ECF No. 45) Thereafter, Harris was released from incarceration and began supervised release in 2014. The timeline of relevant events begins in September 2015:

(1) In September 2015, Harris was arrested on a cluster of offenses: possession of a firearm by a convicted felon

1

and possession with intent to distribute crack cocaine ("the September 2015 guns-and-drugs allegations").

(2) Later in September 2015, Harris failed to inform his probation officer that he had follow-up contact with state law enforcement in connection with the September 2015 guns-and-drugs allegations.

(3) On October 6, the Court revoked Harris's supervised release based on the failure-to-inform, and sentenced him to incarceration from October 6, 2015 to November 5, 2015. (ECF Nos. 77, 91).

(4) On October 23, 2015, the probation officer filed an addendum to the petition on supervised release based on the mandatory condition not to commit a further crime. (ECF No. 100).

(5) In April 2015, Harris was tried on the September 2015 guns-and-drugs allegations, and was convicted on a single count of being a felon in possession of a firearm. (Case No. 3:15CR170). Harris was sentenced to 120 months on that count on June 23, 2016.

Before Harris was sentenced in 3:15CR170, Harris filed this motion.

Harris begins the motion by acknowledging that United States v. Winfield, 665 F.3d 107 (4th Cir. 2012) "governs this Court's analysis of this motion." (Def.'s Mtn. to Dismiss

Supervised Release Violation Petition for Lack of Jurisdiction, ECF No. 119, 3) ("Def.'s Mtn."). Winfield held that a prior revocation on minor or technical violations does not prevent a second revocation on more significant or substantive violations. Id. at 109-10. Harris argues that Winfield was "incorrectly decided" and must be overturned on the basis of a Ninth Circuit decision, United States v. Wing, 682 F.3d 861 (9th Cir. 2012). (Def.'s Mtn. 3, 5).

## II. FOURTH CIRCUIT PRECEDENT TEACHES THAT THIS COURT HAS JURISDICTION

### A. Winfield Teaches that "Revocation" does not Actually Terminate Supervised Release

In 2000, the Supreme Court concluded that revoking a term of supervised release does not terminate that term of supervised release.[1] Johnson v. United States, 529 U.S. 694, 706-07 (2000)

---

[1] As the Fourth Circuit described Johnson in 2012:

> the Supreme Court addressed whether, under § 3583(e)(3), a district court has the authority to impose a new term of supervised release following re-incarceration for violations of the original supervised-release term .... The Supreme Court determined that a revoked term of supervised release does not terminate the release, but instead "recall[s]," "call[s] or summon[s] back" the release during the defendant's imprisonment for violations of the release. Id. at 706, 120 S.Ct. 1795. The Supreme

3

("If 'the term of supervised release' is being served, in whole or part, in prison, then something about the term of supervised release survives the preceding order of revocation."). Relying on Johnson, the Fourth Circuit concluded that "a revocation of a term of supervised release is not equivalent to a termination of the release, and thus the revoked term remains in effect." Winfield, 665 F.3d at 112.

---

> Court examined the language of § 3583(e)(3), which at that time provided that a court could "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release...." Id. at 704, 120 S.Ct. 1795. The Supreme Court reasoned that the re-incarceration "is not a 'term of imprisonment' that is [] be[ing] served, but all or part of 'the term of supervised release.'" Id. at 705, 120 S.Ct. 1795. The Court continued, "If 'the term of supervised release' is being served, in whole or part, in prison, then something about the term of supervised release survives the preceding order of revocation." Id. ... The Court held that because the revocation of a term of supervised release under § 3583(e)(3) does not "terminate" the release — or the district court's jurisdiction to oversee the supervised release past the re-incarceration — a district court had the authority to impose an additional term of supervised release after the completion of the prison sentence. Id. at 712-13, 120 S.Ct. 1795.

Winfield, 665 F.3d at 110-11 (emphasis added).

4

**B. <u>Brown</u> Teaches that A Violation Sentence is Part of the Term of Supervised Release for which the Violation Sentence was Imposed**

<u>Winfield</u>'s holding was recently reaffirmed in <u>United States v. Brown</u>, No. 15-4256, 2016 WL 3182700 (4th Cir. Jun. 8 2016) (not selected for publication). In <u>Brown</u>, the timeline was as follows:

(1) In November 2013, the district court revoked supervised release on technical grounds "and imposed a sentence of seven months' imprisonment, to be followed by a new twelve month term of supervised release."

(2) Sometime between November 2013 and June 2014, defendant was indicted on state drug charges based on conduct which occurred in September or October 2013.

(3) In June 2014, defendant completed his federal sentence, but was held on detainer on the state drug charges.

(4) In November 2014, defendant pled guilty on the state charges.

(5) In November 2014, defendant's probation officer asked the district court to revoke defendant's supervised release again on the basis of the November 2014 state drug conviction.

<u>Brown</u>, 2016 WL 3182700, at *1. At a hearing on that November 2014 petition, the

5

> district court held a revocation hearing, in which the government clarified that it did not seek revocation of the second supervised-release term, but rather <u>wanted the court to impose additional prison time for the more serious violations committed during the original release term</u>. The district court agreed and concluded that it had jurisdiction under <u>United States v. Winfield</u>, 665 F.3d 107 (4th Cir. 2012), to again revoke Brown's original supervised release.

<u>Id.</u>[2](emphasis added).

The Fourth Circuit vacated the district court's decision, noting that the district court's decision was understandable in light of <u>Winfield</u>, but that it had failed to take into account "the newly imposed period of supervised release – a circumstance not present in <u>Winfield</u>," which altered the analysis. <u>Id.</u> at *3.

> Had Brown been released — rather than detained — in June 2014, his new twelve-month term of supervised release would have begun, and the district court would have improperly revoked that release term in April 2015. Thus, when a revocation sentence is to be followed by a new, separate term of supervised release, we see no meaningful distinction between the defendant's completion of the revocation sentence and release from custody, and the defendant's completion of the revocation sentence and

---

[2] This does tend to imply that if (1) a Defendant commits a technical violation and a substantive violation on January 1; and (2) on January 2 the probation officer submits a petition only on the technical violation; and (3) the judge on February 1 sentence Defendant to 28 days in jail and twelve months supervised release on the technical violation; <u>then</u> any petition for based on the substantive violation of January 1 must be filed in February, while defendant is serving his revocation sentence.

6

>subsequent, unrelated pre-trial detainment. The pre-trial detainment's legal significance operates on the new term of supervised release (so as to toll it) and has nothing to do with the completed revocation sentence—or, therefore, the original supervised-release term.
>
>Accordingly, Brown's original term of supervised release expired in June 2014 when he completed his revocation sentence, making the probation officer's November 2014 petition to revoke the original release term fall after that term's expiration. As a result, the district court did not have jurisdiction in April 2015, on the basis of a November 2014 revocation petition, to revoke Brown's original term of supervised release and impose a new revocation sentence.

Id. at *3. Brown distinguishes itself from, but does not otherwise disparage, Winfield. In doing so, the Fourth Circuit explained that a revocation nsentence is part of the period of supervised release for which the revocation sentence was imposed.

The timing differences between this case and Brown require that the Court reach a result opposite to that reached by the Court of Appeals in Brown. In Brown, the probation officer brought the petition in question after the defendant completed his revocation sentence. In this case, the probation officer brought the petition in question before Harris completed his revocation sentence.

7

The difference in timeline is significant because, applying Brown and Ides, Harris's original term of supervised release did not end until November 5, 2015, the date on which he completed his revocation sentence. Cf. Brown, 2016 WL 3182700 ("Brown's original term of supervised release expired in June 2014 when he completed his revocation sentence."). That means that the probation officer's October 23, 2015 petition to revoke the original release term did not occur after the term's expiration (on November 5, 2015). Cf. id. ("making the probation officer's November 2014 petition to revoke the original release term fall after that term's expiration"). As a result, the district court presently has jurisdiction, on the basis of the October 23, 2015 revocation petition, to revoke Harris's original term of supervised release and impose a new revocation sentence. Cf. id. ("As a result, the district court did not have jurisdiction in April 2015, on the basis of a November 2014 revocation petition, to revoke Brown's original term of supervised release and impose a new revocation sentence.").

Therefore, under Winfield and Brown, the period of supervised release continues through a revocation sentence imposed on the basis of that period of supervised release, and the Court retains jurisdiction over petitions filed during the revocation sentence. (See also Gov't's Resp., Docket No. 122, 5-7).

8

## III. NINTH CIRCUIT CASES CANNOT GOVERN THIS COURT'S ANALYSIS

In Wing, the Ninth Circuit reached an opposite conclusion, finding that a district court lacks jurisdiction under 18 U.S.C. § 3583(e)(3) to revoke a term of supervised release based on newly discovered violations of a previously revoked term of supervised release. Wing, 682 F.3d at 863.

The timeline and relevant facts in Wing are substantively identical to the timeline in Harris's case. The trouble with following Wing is not Wing's factual similarity, but Wing's legal conclusions, which run contrary to Supreme Court's decision in Johnson and to the Fourth Circuit's decision in Winfield.

Indeed, the Ninth Circuit's decision in Wing depends on an explicit rejection of the Supreme Court's decision in Johnson.[3] The Ninth Circuit found that Johnson's use of an "unconventional" use of the word "revoke" was based on the language of pre-1994 § 3583(e)(3), and decided that Johnson did not apply to cases involving the statute as amended in 1994. Wing, 682 F.3d at 868; see also (Def.'s Reply, ECF No. 123, 1-4). The Ninth Circuit decided that, because Johnson did not guide its decision of a case dealing with post-1994 §

---

[3] Which runs directly contrary to Winfield – released several months before Wing – embracing Johnson.

9

3583(e)(3), it would use the "ordinary" sense of "revoke" – "to void or annul by recalling, withdrawing, or reversing." Id.

For this Court, there are three problems with relying on Wing: Fourth Circuit precedent, Supreme Court precedent, and practicality. First, Wing's rule that "revocation means termination" stands in direct opposition to the Fourth Circuit's opinion in Winfield. Winfield, 665 F.3d at 112 ("a revocation of a term of supervised release is not equivalent to a termination of the release, and thus the revoked term remains in effect."). Second, as the Wing dissent pointed out, Congress never "remove[d] the primary language upon which the Supreme Court's interpretation relied" or otherwise acted to correct Johnson's interpretation of § 3583(e)(3). Wing, 682 F.3d at 877 (Tallman, J., dissenting); United States v. Vazquez-Alvarez, No. CIV. 12-286 GAG, 2015 WL 5090113, at *5 (D.P.R. Aug. 24, 2015). In other words, Wing hinges on a statutory change that either never happened or did not happen the way the Ninth Circuit claims. Without that statutory change, Johnson (as developed in Winfield) controls. Third, application of the Wing rule presents a perverse incentive: if a defendant engages in conduct that constitutes a technical infraction and engages in conduct which constitutes a substantive infraction, and defendant quickly pleads to the technical infraction and has his sentenced revoked (in the Ninth Circuit's terms, terminated), then a district

court does not (after the start of the "second" term of supervised release) have jurisdiction to punish the major infraction committed during the first-and-now-terminated period of supervised release. Wing, 682 F.3d at 897 (Tallman, J., dissenting). Taken together, these problems constitute insurmountable obstacles to adopting the Ninth Circuit's rule in Wing.

IV. **HARRIS'S ARGUMENT**

Harris's argument in this case consists, essentially, of: (1) Johnson only applies to cases governed by pre-1994 § 3583 (Def.'s Reply 1-4); (2) the Fourth Circuit in Winfield and Brown erred in improperly applying Johnson to cases governed by post-1994 § 3583 (Def.'s Reply 4-8); and (3) the Court should find that Winfield and Brown were wrongly decided and follow Wing instead. (Def.'s Mtn. 5-6). A district court cannot depart from the law of the circuit, at least not without some legitimate intervening change in controlling law. There are two reasons to believe that no such change exists. First, if the 1994 Amendments to § 3583 were such an intervening change in the law, as Wing insists, then Winfield or Brown would have mentioned

11

that change.[4] Second, at least three judges - dissenting Judge Tallman in Wing, the district judge in Wing, and the district judge in Vazquez-Alvarez - have all disagreed with the Wing majority's conclusion that the 1994 Amendments made substantive changes to revocation. Wing, 682 F.3d at 877 (Tallman, J., dissenting); Vazquez-Alvarez, 2015 WL 5090113, at *5. The Court finds these views to be correct.

Harris also argues that "[t]he Court's practical experience also counsels that a defendant is not on supervised release while serving a reimprisonment term" because defendants are not expected to adhere to the standard conditions of supervised release (such as sending monthly reports or not associated with felons) while incarcerated. (Def.'s Reply 8-9). On this basis, Harris alleges that there is a clear difference between supervised release (which he alleges he was not on in October 2015) and incarceration (which he alleges he was in October 2015). This is creative, but it is a distinction without a difference because Winfield is predicated on a rationale that renders the distinction inapplicable.

---

[4] The Brown court acknowledged Wing's existence, and stated that it was not facing the issue at the heart of Wing. Brown, 2016 WL 3182700, at *3.

12

## V. CONCLUSION

Johnson, Winfield, and Brown teach that Harris's original term of supervised release did not end until November 5, 2015. Because the present petition was filed on October 23, 2015, the Court has jurisdiction over the petition. Harris's reference to Wing is not persuasive because the Court must adhere to the binding authority of its own circuit in Winfield, particularly when that authority has been recently restated in Brown.

For the foregoing reasons, Defendant Marcus L. Harris's MOTION TO DISMISS SUPERVISED RELEASE VIOLATION PETITION FOR LACK OF JURISDICTION (ECF No. 119) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 20, 2016